## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MUSAELYANTS, | ) | Case No. 1:05-cr-347 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## OPINION AND ORDER

Petitioner Paul Musaelyants objects to the Magistrate Judge's report and recommendation, which recommends that the Court deny his petition for writ of error *coram nobis*. For the reasons set forth below, the Court **OVERRULES** the objections (ECF No. 13) and **ADOPTS** the report and recommendation (ECF No. 11).

## STATEMENT OF FACTS

Musaelyants was born in Azerbaijan in 1975. (ECF No. 24-1, ¶ 3.) In 1988, his family fled Azerbaijan due to civil unrest and fear for their safety and settled in Moscow. (*Id.*, ¶ 4.) In 1993, he and his family entered the United States as refugees. (*Id.*) In 1995, Musaelyants was granted lawful permanent residence status in the United States. (*Id.*, ¶ 5.) He has three children, all of whom are United States citizens. (*Id.*, ¶ 7.)

### A.    Conviction

In 2004, the United States investigated Lana's Transportation, where Musaelyants worked, for health care fraud. (*Id.*, ¶ 9.) Musaelyants was identified as

a potential suspect and agreed to cooperate with the investigation. (*Id.*) In January 2005, Musaelyants met with government officials, including an assistant United States Attorney, who suggested a plea agreement. (*Id.*, ¶ 11.) Musaelyants expressed concerns regarding the potential effect a criminal conviction could have on his status as a lawful permanent resident and alleges that he was assured that a conviction under the terms proposed by the government would not affect his ability to remain in the country. (*Id.*, ¶ 11.)

Musaelyants eventually obtained representation from the public defender's office. (*Id.*, ¶ 12.) He alleges that his attorney assured him that a conviction under the proposed plea offer would not result in his removal from the United States. (*Id.*, ¶ 14.) Further, he alleges that his attorney advised him that the proposed terms were favorable and that he should agree to plead guilty rather than go to trial. (*Id.*, ¶13.) Based on his counsel's advice, Musaelyants pled guilty on August 16, 2005 to one count of health care fraud in violation 18 U.S.C. § 1347 pursuant to the plea agreement. (ECF No. 7.) During the change of plea hearing, the district court questioned Musaelyants about whether he understood the potential immigration consequences of his plea, Musaelyants stated that he did. (ECF No. 19, PageID #150.)

On November 21, 2005, the court sentenced Musaelyants to probation for three years, with six months of home confinement, ordered him to pay $30,000 in restitution, and entered judgment on December 14, 2005. (ECF No. 14.) Musaelyants did not appeal.

2

## B. Removal Proceedings

In January 2006, Musaelyants was instructed to report to the local offices of the Department of Homeland Security in Cleveland, Ohio, where he was given a notice to appear advising that he was subject to removal from the United States based on his conviction of an aggravated felony (a fraud offense that involved a loss to the victim in excess of $10,000). (ECF No. 24-2.) DHS detained him and transferred him to a detention facility in Oakdale, Louisiana pending his final removal hearing. (ECF No. 24-3.)

Musaelyants hired an immigration lawyer to represent him in his deportation proceedings, who filed a motion to vacate his plea under 28 U.S.C. § 2255. In his Section 2255 motion, Musaelyants argued that his guilty plea was not knowing and voluntary because his trial counsel misled him when telling him that he would not be deported if he pled guilty. (ECF No. 18, ¶ 28, PageID #102.) The same district court that took Musaelyants's plea denied his motion on January 16, 2007. (ECF No. 20.) Musaelyants did not appeal.

Musaelyants alleges that post-conviction counsel did not tell him that he could attempt to appeal the district court's denial of his Section 2255 motion or otherwise challenge the legitimacy of his conviction. (ECF No. 24-1, ¶ 22.) He alleges that his counsel's office told him that the government "would not be able to deport him because Azerbaijan was a member of the Soviet Union, which had ceased to exist since the family's initial exodus from the country." (Id., ¶ 23.) Counsel advised Musaelyants that he would remain in DHS custody while the proceedings were pending, but that if he executed a waiver of any challenge to removal from the United States he could

3

be released.  (*Id.*)  Because "counsel reassured [Musaelyants] that deportation was impossible" and there was "no risk to executing the waiver," Musaelyants executed the waiver and was released from custody.  (*Id.*, ¶¶ 23, 24.)

In the years that followed, Musaelyants made regular reports to his immigration officer and renewed his immigration paperwork.  (*Id.*, ¶ 24.)  In 2019, with the approval of his immigration officer, he moved to Arizona "and continued to follow all directives" from governmental immigration agencies.  (*Id.*, ¶ 26.)  In October 2020, Musaelyants's DHS officer informed him that the government would proceed with his removal as a result of his criminal conviction.  (*Id.*, ¶ 27.)

## STATEMENT OF THE CASE

On June 4, 2021, Musaelyants filed a petition for writ of error *coram nobis,* seeking to vacate his guilty plea for reasons similar to those advanced in his Section 2255 motion filed in 2006.  Musaelyants argues that he was denied his constitutional right to the effective assistance of counsel, rendering his guilty plea unknowing and involuntary.  (ECF No. 24, PageID #172.)  Specifically, he alleges that both his trial counsel and post-conviction counsel misinformed him that he would not be removed if he (1) pled guilty to health care fraud and then (2) forwent seeking a certificate of appealability for his habeas petition and waived his right to challenge his removal. (*Id.*, PageID #187, 199–200.)

### A.    Report and Recommendation

The Magistrate Judge recommends that the Court deny Musaelyants's petition for several reasons.  First, the report concludes that Musaelyants's ineffective-assistance-of-trial-counsel claim fails.  The Magistrate Judge finds that (1) *Padilla v.*

*Kentucky*, 559 U.S. 356 (2010), which holds that an attorney for a criminal defendant must provide advice about the risk of deportation arising from a guilty plea, does not apply retroactively to Musaelyants's case, therefore baring his claim as untimely; and (2) Musaelyants fails to show that he was prejudiced under *Strickland v. Washington*, 466 U.S. 668 (1984), by counsel's advice about his risk of deportation because the Court's plea colloquy cured any such defect. (ECF No. 29, PageID #251–60.)  Second, it reports that Petitioner's ineffective assistance of counsel claim against his post-conviction counsel likewise fails because (1) post-conviction counsel did not cause him to plead guilty and properly informed him of his right to appeal his denied motion to vacate, and (2) there is no constitutional right to effective counsel in Section 2255 proceedings. (*Id.*, PageID #260–61.)  Finally, the Magistrate Judge reports that Musaelyants's petition is barred by laches because the record reflects that he knew his guilty plea would result in his deportation in January 2006 at the latest, but nonetheless unduly delayed filing his petition. (*Id.*, PageID #261–63.)

### B.    Objections

Petitioner makes four objections to the report and recommendation. (ECF No. 30.)  First, he objects to the Magistrate Judge's conclusion that his conviction was final in December 2005, arguing instead that his conviction was not final until 2020, when he was ordered removed. (*Id.*, PageID #268–69.)  Second, he objects to the conclusion that he was not prejudiced under *Strickland* because his counsel led him to believe that he could not be deported if he pled guilty. (*Id.*, PageID # 269–71.)  Third, he objects that his post-conviction counsel influenced him to forego seeking a certificate of appealability and challenging his removal proceedings. (*Id.*, PageID

#271–72.)  Fourth, he argues that his claims are not barred by laches because, though

he initially understood that he could be removed, he was later told by his counsel that

he could not, tolling the laches period until 2020, when he was ordered to appear for

removal.  (*Id.*, PageID #272.)

## STANDARD OF REVIEW

After the report and recommendation is filed, if a party objects within the

allotted time, the district court is required to "make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made."  28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b).  Upon

review, the court "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Importantly,

the court's job is not to conduct a free-wheeling examination of the entire report and

recommendation, but only to address any specific objections that a party has

advanced to some identified portion of it.  Accordingly, it is the Court's task in this

matter to review the Magistrate Judge's report and recommendation de novo, based

on the specific objections that Musaelyants raises.

## ANALYSIS

"*Coram nobis* is an extraordinary writ, used only to review errors of the most

fundamental character—*e.g.*, errors rendering the proceedings themselves invalid."

*United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001) (citing *Blanton v. United

States*, 94 F.3d 227, 230 (6th Cir. 1996)).  The writ is used "when a § 2255 motion is

unavailable—generally, when the petitioner has served his sentence completely and

6

thus is no longer 'in custody' as required for § 2255 relief." *Id.* To prevail, a petitioner must demonstrate (1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known. *Id.*; *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012).

Although the Court doubts that Musaelyants may use a petition for a writ of *coram nobis* to assert his claims—the Court assumes the writ presents an appropriate mechanism for Petitioner's claims and addresses each of his objections in turn.

## I.    Finality of Conviction

Petitioner objects to the Magistrate Judge's conclusion that *Padilla v. Kentucky*, 559 U.S. 356 (2010), in which the Supreme Court held that trial counsel is obligated to advise the defendant of the implications of guilty plea on his immigration status, does not apply to Musaelyants because his case was final in 2005, five years before *Padilla* was decided. To be clear, Petitioner does not object to the Magistrate Judge's conclusion that *Padilla* does not apply retroactively, he argues only that his case was not final until 2020, when he was ordered to appear for removal.

Petitioner maintains that, under 28 U.S.C. § 2255(f)(4), his conviction became final in 2020 because he discovered new information that he was subject to removal. (ECF No. 30, PageID #269.) But this argument fails for several reasons. First, Petitioner admits that he knew he was subject to deportation before 2010, contradicting his assertion that his notice to appear presented new information. Second, Petitioner's invocation of Section 2255 belies his assertion that his conviction was not final in 2005. Section 2255 provides for and can only be invoked as a

7

collateral attack to a *final* conviction.  Although there are other defects in Petitioner's

argument based on Section 2255, the Court agrees with the Magistrate Judge's report

and recommendation and **OVERRULES** Petitioner's first objection.

## II.     Ineffective Assistance of Trial Counsel

Petitioner objects to the Magistrate Judge's conclusion that the plea colloquy

cured any prejudice from his trial counsel's allegedly deficient advice that he would

not be removed if he pled guilty.  During the plea colloquy, Musaelyants affirmed that

he understood that his guilty plea might affect his ability remain in the country.

(ECF No. 30, PageID #269–71.)  Musaelyants does not dispute that fact.

Instead, he argues that his counsel led him to believe that he could not be

removed regardless of what the district court told him.  But the record reflects that

Petitioner's counsel informed him that he could not provide advice with regards to

his immigration status.  (ECF No. 19, PageID #149.)  Further, the court gave

Petitioner an opportunity to continue the change of plea hearing so he could consult

an immigration attorney—which he declined to do.  (*Id.*)  When the court proceeded

with the plea colloquy, it twice asked whether Petitioner understood the implications

of his guilty plea on his immigration status and his ability to remain in the United

States; both times Musaelyants said he did.  (*Id.*, PageID #150.)  Therefore,

Musaelyants' repeated acknowledgments of the potential immigration consequences

of his guilty plea cured any prejudice from his counsel's advice.  *See Boyd v. Yukins*,

99 F. App'x 699, 705 (6th Cir. 2004) ("Any misleading information imparted to Boyd

was remedied by the plea colloquy, which made it clear that she could face a sentence

up to and including life imprisonment."); *Cadavid-Yepes v. United States*, 635 F.

App'x 291, 299–300 (6th Cir. 2016) (citing *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993), and *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)). Accordingly, the Court **OVERRULES** Petitioner's second objection.

### III.    Ineffective Assistance of Post-Conviction Counsel

Petitioner objects to the Magistrate Judge's recommendation that the Court reject his ineffective assistance of counsel claim against his post-conviction counsel. He argues that his counsel convinced him to forgo further attempts to vacate his conviction and waive a challenge to his removal proceedings.  But the law is clear that there is no constitutional right to counsel in federal habeas proceedings.  *See, e.g., Zirker v. United States*, 2017 WL 2181542, at *10 (M.D. Tenn. May 18, 2017) (claim that post-conviction counsel was ineffective failed because there is no constitutional right to counsel in Section 2255 proceedings and, therefore, no claim for ineffectiveness of counsel); *see also Coleman v. Thompson*, 501 U.S. 722, 752–54 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *cf. Kapenekas v. Snyder-Norris*, No. 16-6310, 2017 WL 3725355, at *3 (6th Cir. Apr. 10, 2017) (rejecting the petitioner's argument that the reasoning in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), applies to Section 2255 petitions).  Therefore the Court **OVERRULES** Petitioner's third objection.

### IV.    Laches

Petitioner objects to the Magistrate Judge's recommendation that the doctrine of laches bar his petition.  Specifically, he argues that "while he may have initially been aware that his conviction could subject him to removal, his understanding changed as a direct result of the improper and misleading advice that he received

9

from his attorney." (ECF No. 30, PageID #272.)  Even if his counsel provided him

with incorrect advice, the fact remains the same:  he knew he was removable before

his release from ICE custody, when he was ordered deported in 2006.  Petitioner's

position that his counsel—not the DHS or ICE—informed him that he could not be

deported, and that his removal was delayed for fourteen years is neither a new

development nor a sound basis for why the delay in asserting his claims.  Further,

his asserted reasons for his delay do not overcome the prejudice against the parties

opposing his petition.  The Court **OVERRULES** Petitioner's fourth objection.

**CONCLUSION**

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections

(ECF No. 30), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF

No. 29), and **DENIES** the petition for a writ of error *coram nobis*.

**SO ORDERED.**

Dated:  February 22, 2022

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio